UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>FRANCISCO LUNA,<br><br>Defendant. | Case No. 3:17-cr-00075-1<br><br>Chief Judge Crenshaw<br>Magistrate Judge Newbern |

### MEMORANDUM

This matter comes before the undersigned magistrate judge on the United States' motion for detention of Defendant Francisco Luna pending trial on two indicted offenses. (Doc. No. 7.) A hearing was held on June 27, 2017, at which the Court heard testimony and considered documentary evidence and the parties' arguments.

At the conclusion of that hearing, the undersigned entered an order denying the United States' motion and setting conditions of release. (Doc. Nos. 22, 23.) This memorandum accompanies that order and the reasons stated on the record for the undersigned's order that Luna be released on conditions. That order is presently stayed pending the district court's review. (Doc. No. 25.)

### I. Statutory Framework

A defendant may be detained pending trial only upon the Court's finding that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). The Court's finding that no combination of conditions will reasonably assure the community's safety must be supported by clear and convincing evidence. 18 U.S.C. §

3142(f)(2)(B). A finding of risk of flight must be supported by a preponderance of the evidence. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). "The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F. 3d 939, 945 (6th Cir. 2010).

For certain classes of offenses, however, including a charge that carries a maximum term of imprisonment of ten years or more under the Controlled Substances Act, there is a presumption that no condition or combination of conditions will assure a defendant's appearance and the safety of the community. 18 U.S.C. § 3142(e)(3)(A). When this presumption arises, the defendant bears a "not heavy" burden of production to rebut it by introducing "at least some evidence" that he is neither a danger to the community nor a flight risk. *Stone*, 608 F.3d at 945. If that burden is satisfied, the presumption "remains a factor to be considered among those weighed" by the Court as a reflection of "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id*.

In determining whether there are conditions of release that will reasonably assure the defendant's appearance and the safety of any other person and the community, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

## II.     Findings of Fact

The United States invoked the rebuttable presumption of detention established by 18 U.S.C. § 3142(e)(3)(A), citing Luna's indictment on one count of violating 21 U.S.C. § 846 and

one count of violating 21 U.S.C. § 841(a)(1), which, as charged, carry mandatory minimum sentences of ten years imprisonment and maximum life sentences. (Doc. No. 1.)

To rebut this presumption, Luna introduced testimony from two witnesses and multiple letters from friends and family members. (Doc. Nos. 15, 16; Def. Ex. 1.)

Luna's mother, Iracema Luna, testified that she is a resident of Edinburg, Texas, where she lives with her husband, mother-in-law, and son (Luna). Iracema stated that Edinburg is part of the greater McAllen, Texas, area, located approximately an hour's drive from the Mexican border. The family has lived in the same house, which they own, for eighteen years. Iracema has been a lawful permanent resident of the United States since 1971. Her husband (Luna's father) has been a lawful permanent resident since approximately 1974. Luna is a United States citizen. Iracema works in their home; her husband is an agricultural worker. Iracema testified that their large and close-knit family lives nearby in the McAllen area.

Iracema testified that Luna did not finish high school and began working at around age seventeen. Luna travelled outside of Texas to work, first to Indiana for agricultural work, then to Oklahoma to work construction. Iracema believed that Luna had also recently worked in Kansas and San Antonio, Texas. She testified that Luna helps support the family with his wages and returns to live in their Texas home when he is not away on a job. Iracema described her son as respectful and obedient. She stated her willingness to serve as a third-party custodian during Luna's pre-trial release and affirmed her understanding that doing so would require her to report any pre-trial release violations, which might result in Luna's imprisonment.

On cross-examination, Iracema testified that she and her husband travel to Mexico approximately twice a year to visit friends. She testified that her family now lives in the United States. Luna does not travel to Mexico often, but has been to Mexico in the past. Iracema further

testified that she was not aware of any drug activity by Luna or of any of the allegations underlying the indicted offenses.

Luna's grandmother, Aurora Luna, testified that she has lived with Luna since his birth. She testified that Luna helps her with tasks that age-related infirmities now prevent her from doing. She described Luna as obedient and said that, when he is with her, he is "under her reins." Aurora testified that she did not know about any of the information underlying the charged offenses before Luna's arrest.

Luna also offered letters from numerous relatives and friends attesting to his good character and to their willingness to support him if he is released. (Doc. Nos. 15, 16; Def. Ex. 1.) Ten members of Luna's immediate family, including his mother, father, and grandmother, drove from Texas to attend the hearing.

The undersigned found this evidence sufficient to rebut the presumption of § 3142(e)(3).

The United States offered testimony from Drug Enforcement Agency Agent Gannon Hicks, who participated in the investigation that led to Luna's arrest. Hicks testified that, in March 2017, Luna negotiated the purchase and delivery of ten kilograms of methamphetamine with an undercover agent through a series of twenty to thirty recorded telephone calls and text messages. Luna was the only person who spoke with the undercover agent during this negotiation, which Hicks believes indicates that Luna was a "trusted person" in a larger drug distribution scheme and had likely performed other such negotiations and deliveries in the past. Hicks stated that Luna also made reference to having recently "worked another job" in Miami in a conversation with the undercover agent.

Hicks testified that the undercover agent arranged for Luna to deliver the quantity of methamphetamine in Nashville. On March 17, 2017, agents tracked Luna as he drove from Atlanta

to the Nashville area, where he was pulled over in a traffic stop. Hicks testified that, when asked by the officers executing the stop if he was transporting methamphetamine, Luna answered, "I don't know, maybe." A drug dog alerted on Luna's vehicle and Luna consented to a search. Agents discovered ten kilograms of methamphetamine in the tool box of Luna's truck. Hicks testified that this was a "very significant" quantity of methamphetamine that would likely be parceled to multiple distributors and sold for a large sum of money.

Hicks testified that, upon his arrest, Luna was transported to the Williamson County jail where an additional six grams of methamphetamine was discovered on his person. Agents also recovered and searched two cell phones which contained pictures of methamphetamine that matched what had been seized from Luna's car.

In argument, the United States proffered that Luna stated he had used methamphetamine on the day he drove from Atlanta to Nashville. The United States argued that detention is routinely found appropriate for defendants facing drug trafficking charges and that the high sentences Luna faces make detention especially appropriate here. The United States also emphasized the proximity of Luna's home to the Mexican border and argued that the family's ties to Mexico and that proximity heightened the risk that Luna would flee.

Luna's counsel argued that all of Luna's family is in the United States, that Luna is a U.S. citizen, and that there had been no evidence presented that Luna had any ties to Mexico. Counsel also emphasized that Luna has no criminal record, no history of violence, and that no weapons were recovered in the course of this investigation. Counsel argued that conditions could be imposed that would guarantee Luna's future appearance and mitigate any risk of danger.

The undersigned also considered the report of the Office of Probation and Pre-Trial Services, which recommends that Luna be released on a collateral bond with significant conditions.

### III. Analysis

In light of the testimony and other evidence presented, the undersigned considers each of the factors of 18 U.S.C § 3142(g) in turn.

#### A. The Presumption of Detention

The undersigned found that Luna presented sufficient evidence to rebut the presumption of detention. However, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighted by the district court," reflecting "Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Stone*, 608 F.3d at 946. To overcome this presumption, "a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm[.]'" *Id.* (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)). The undersigned finds that the "special features" of Luna's case distinguish it from the majority of similar cases and remove it from the "congressional paradigm," as set out below.

#### B. The Nature and Circumstances of the Offense Charged

Luna has been indicted on charges of two controlled substance offenses that carry high penalties: possession with intent to distribute 500 grams or more of a substance containing methamphetamine, in violation of 21 U.S.C. § 841, and conspiring with others to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. Both offenses carry a mandatory minimum ten-year term of incarceration, a maximum life sentence, and a maximum $10,000,000.00 fine. By any measure, these charges are serious. And Congress has emphasized controlled substances

offenses as warranting particular concern in the pre-trial detention analysis. 18 U.S.C. § 3142(g)(1).

The Sixth Circuit has also recognized that "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947 n.6. (noting that the Court "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill durg dealers, even without any indication that the defendant has engaged in violence"). In particular, "the risk of continued narcotics trafficking on bail constitutes a risk to the community." *United States v. Hare*, 873 F.2d 796, 798 (5th Cir. 1989) (cited with approval in *Stone*, 608 F.3d at 947 n.6). This factor thus weighs in favor of Luna's detention based on the nature of the charged offenses alone.

### C. The Weight of the Evidence Against Luna

This factor addresses "the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. The United States' evidence came through Hicks's testimony, which was drawn in part from personal knowledge and in part from conversations with other agents and a review of records from the underlying investigation.

The threat of danger alleged here is of continued drug trafficking. *Hare*, 873 F.2d at 798. Hicks testified that the quantity of methamphetamine recovered from Luna's truck was "very significant" and would make "a lot of money" for multiple distributors. Hicks also testified that there was no evidence that Luna had threatened violence and no weapons were recovered. This distinguishes Luna's case from others in which defendants have been detained pending trial on offenses involving similar quantities of drugs. *See, e.g.*, *United States v. Holden*, No. 17-CR-33-JMH-1, 2017 WL 1362684, at *2 (E.D. Ky. Apr. 12, 2017)

(noting in evaluating evidence of dangerousness the significance of handgun tucked in defendant's waistband during a controlled buy and handgun recovered from defendant's apartment in addition to danger associated with drug trafficking); *United States v. Tawfik*, No. 17-CR-20183-2, 2017 WL 1457494, at *6 (E.D. Mich. Apr. 25, 2017) (finding evidence of dangerousness in possession of a concealed pistol and history of physical abuse in addition to lengthy sentences falling within presumption of detention). It also distinguishes Luna's case from those in which a link between drug trafficking and weapons is presumed. *See United States v. Leary*, 422 F. App'x 502, 511 (6th Cir. 2011) (noting presumption that "drug dealers generally possess guns for protection from drug users and other drug dealers").

Thus, while the weight of evidence of presumed dangerousness tied to Luna's charges is strong, it is tempered by other evidence particular to his arrest. This factor is neutral in the undersigned's analysis.

### D. Luna's History and Characteristics

The Court must also consider Luna's individual history and characteristics, including, among other factors, his character, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, and criminal history. 18 U.S.C. § 3142(g)(3)(A)–(B).

The undersigned finds it to weigh strongly in Luna's favor that he has no criminal history.[1] The United States proffered that Luna stated he had used methamphetamine on

---

[1] While the United States implied that Luna's lack of a criminal record is only because of his relatively young age of twenty-two, the undersigned finds this argument unpersuasive. Defendants regularly appear before this Court with lengthy criminal histories amassed by the time they are Luna's age.

the day of his arrest, but no other evidence of drug or alcohol abuse was offered. Luna's mother testified that he would be able to get agricultural work in McAllen if released.[2]

Also significant are the strong family ties demonstrated at Luna's detention hearing. Ten members of Luna's family drove more than 1,100 miles to appear on his behalf; eight friends and family members submitted letters attesting that they would support Luna if he is released pending his trial. It is clear to the undersigned that, if released, Luna will return to a strong network of friends and relatives in the community where he has lived since birth.

This factor weighs in favor of Luna's release.

**E. The Nature and Seriousness of the Danger to Any Person or the Community That Would Be Posed By Luna's Release**

There is no question that drug trafficking is a threat to any community in which it takes place, and Congress has firmly established that the danger it presents is to be given great weight in any pre-trial release decision. However, the task of the Court in assessing a motion for pre-trial detention is to determine "whether any condition or combination of conditions . . . will reasonably assure the appearance of such person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(f). The Court must also be mindful that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).

The undersigned finds that there are conditions of release that may be imposed in this case to reasonably assure safety and Luna's future appearance. The undersigned so

---

[2] Luna's mother also testified that she had spoken with the employer for whom he had done scaffolding work in Oklahoma and that the employer had told her Luna could work for him again. Because any such work would not be in the area of Luna's supervision, the undersigned will not consider it.

finds based upon the evidence presented that Luna has no criminal history, has no history of violence, was not found to be in possession of any weapons, consented to the search of his vehicle, and complied with officers' directions when he was stopped and searched. This demonstrates to the undersigned that conditions of release may be imposed that will reasonably assure the community's safety. The undersigned further finds that, because Luna will be released to the custody of his family in Texas, he will away from site of his alleged drug trafficking activity, thereby lessening the risk that he could continue to engage in it if released. The undersigned does not find that Luna's release to his family in Texas presents a heightened risk that he will flee. Luna is a citizen of the United States. His parents are lawful permanent residents and all of his immediate family lives in this country. No evidence was presented showing that Luna has any significant ties to Mexico, has spent any significant time in Mexico, or has any particular ability to flee there. The undersigned does not assume a predisposition to do so based only on geography.

The undersigned finds that there are specific conditions of release that will directly address and mediate any threat of danger or risk of flight that Luna presents. These include home detention with GPS monitoring; release to the third-party custody of his mother, Iracema Luna; imposition of an unsecured $25,000.00 appearance bond; and an order that Luna have no contact with anyone who may be a co-defendant, victim, or witness in the prosecution of his underlying charges.

## IV. Conclusion

In light of these conditions and the others imposed by separate order (Doc. No. 22), and for the additional reasons stated on the record in the June 27, 2017 detention hearing, the undersigned finds that Luna's pre-trial release is warranted.

Entered this third day of July 2017.

_____
ALISTAIR E. NEWBERN
United States Magistrate Judge